IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LUND-ROSS CONSTRUCTORS, INC., <br><br> Plaintiff/Counter-Defendant, <br><br> v. <br><br> VECINO NATURAL BRIDGE, LLC, <br><br> Defendant/Counter-Plaintiff. | 8:19CV550 <br><br> **MEMORANDUM AND ORDER** |

This matter is before the Court on defendant/counter-plaintiff Vecino Natural Bridge, LLC's ("Vecino") Second Motion for Partial Summary Judgment (Filing No. 76), Vecino's Motion in Limine (Filing No. 80), and plaintiff/counter-defendant Lund-Ross Constructors, Inc.'s ("Lund-Ross") combined Motion for Partial Summary Judgment and Motion in Limine (Filing No. 84). For the reasons stated below, Vecino's motion in limine is granted; its motion for partial summary judgment is granted in part and denied in part. Lund-Ross's combined motion is denied in its entirety.

**I.   BACKGROUND**

   **A.   Facts**

This construction-contract dispute is back before the Court after several months of discovery and a failed attempt at settlement. *See Lund-Ross Constructors, Inc. v. Vecino Nat. Bridge, LLC*, No. 8:19CV550, 2021 WL 6202667, at *7 (D. Neb. Nov. 3, 2021) (granting Vecino's motion for partial summary judgment in part). Both parties agree that trial will be necessary in this diversity case and that certain issues should be decided by the court as a matter of Nebraska law. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Crain v. Crain*, 72 F.4th 269, 279 (8th Cir. 2023) (describing the agreed application of state substantive law in a diversity case under 28 U.S.C. § 1332(a)(1)). Unfortunately, they do not agree as to what those issues are. Still, many of the underlying facts are uncontested.

Lund-Ross is a general contractor that constructs projects across the Midwest. Vecino is a real-estate developer that owns real property near the campus of Creighton University in Omaha, Nebraska. On October 4, 2017, Lund-Ross and Vecino entered into a standard-form contract (the "contract") for the construction of a two-building apartment complex for student housing on Vecino's property (the "project") with a Guaranteed Maximum Price of $24,114,417.00 at execution. Section 11.5.2 of the contract included non-standard provisions regarding project timing and completion and liquidated damages for breach (the "liquidated-damages provision"). In particular, the contract provided Lund-Ross would incur liquidated damages if the project was not complete by May 31, 2019, for any reason. The contract identified three categories of liquidated damages: (1) daily/monthly damages, (2) hotel costs and per diem, and (3) lost leases.

About two years after the contract was executed, with construction ongoing, Vecino notified Lund-Ross it intended to terminate the contract for cause effective October 14, 2019. Vecino asserted Lund-Ross repeatedly failed to supply sufficient skilled labor for the project and failed to complete it on time. Vecino eventually hired a replacement contractor, Ideal Construction ("Ideal"), which completed a punch list on the project on October 16, 2020, though some minor work remains. Vecino seeks "at least" $1,100,878.58 in liquidated damages and other "mitigation" damages as a result of Lund-Ross's breach of contract.

Attributing some of the delay in completing the project to Vecino, Lund-Ross seeks to recover amounts it says it is owed for the work it did under the contract before termination. In Lund-Ross's view, even if the liquidated-damages provision is valid under Nebraska law, Vecino waived its rights to enforce it. Lund-Ross also disputes Vecino's damage calculations and questions whether the terms of Vecino's agreement with Ideal and their post-termination practices unfairly left Lund-Ross on the hook for additional liquidated and consequential damages.

B.  **Procedural History**

On October 17, 2019, Lund-Ross sued Vecino and others in the District Court of Douglas County, Nebraska (Filing No. 1-2), seeking to enforce its construction lien on the project under Neb. Rev. Stat. § 52-155 and alleging breach of contract, quantum meruit, and unjust enrichment. On December 16, 2019, Vecino removed the case to this Court with the consent of Springfield First Community Bank ("Springfield"), the only other defendant remaining at that point (Filing No. 1).[1]

Vecino then filed an answer and asserted counterclaims against Lund-Ross for breach of contract, wrongful recording of a lien pursuant to Neb. Rev. Stat. § 52-157, declaratory judgment, and unjust enrichment (Filing Nos. 8 and 24). Lund-Ross responded to the counterclaims (Filing No. 23) and later dismissed Springfield as a party (Filing Nos. 25 and 26).

As the case moved forward, the parties advised the magistrate judge assigned to the case that a motion for summary judgment on an issue of contract interpretation might allow them to streamline this case and avoid unnecessary discovery (Filing No. 37). On August 20, 2021, Vecino moved for partial summary judgment (Filing No. 38), asking the Court to find as a matter of law that (1) § 11.5.2 of the contract included a "Final Completion Date of May 31, 2019," that "was not extendable under the [contract]," (2) the liquidated-damages provision in § 11.5.2 was enforceable, and (3) Vecino was entitled to recover liquidated damages from Lund-Ross.

The Court granted the motion in part and denied it in part. *See Lund-Ross*, 2021 WL 6202667, at *7. The Court found that § 11.5.2 set a fixed completion date of May 31,

---

[1] In removing the case, Vecino requested a jury trial. The parties' briefs also frequently argue in terms of how the jury will view the evidence and decide the issues. In contrast, the parties' joint Report of the Parties' Planning Conference (Filing No. 14) indicates that neither "party has timely demanded a jury trial." Based on that statement, the magistrate judge set this case for a non-jury trial. The Court has accounted for that in its analysis.

2019, and that the liquidated-damages provision was not an unenforceable penalty under Nebraska law. *See id.* But the Court concluded "open questions regarding waiver and other damage issues preclude[d] any assessment of damages at [that] time." *See id.*

Over the next several months, the parties conducted extensive discovery and participated in a settlement conference with the magistrate judge. When those efforts at settlement proved unsuccessful, the parties filed the pending cross-motions for partial summary judgment and cross-motions in limine. A bench trial is currently set for February 12, 2024.

## II. DISCUSSION
### A. Motions in Limine
#### 1. Standard of Review

Lund-Ross and Vecino have each filed a motion in limine. Such motions generally allow a party to seek "to exclude evidence before it is offered" at trial or another proceeding. *United States v. Roenigk*, 810 F.2d 809, 815 (8th Cir. 1987); *see also Luce v. United States*, 469 U.S. 38, 40 n.4 (1984) ("Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials."). As with all evidentiary rulings, the Court has considerable discretion in deciding a motion in limine. *See United States v. Daniels*, 932 F.3d 1120, 1123 (8th Cir. 2019); *Spencer v. Young*, 495 F.3d 945, 949 (8th Cir. 2007).

#### 2. Lund-Ross

Lund-Ross's motion in limine is inexorably tied to its motion for partial summary judgment as analyzed below. Its request to bar "the introduction of any testimony or evidence of liquidated damages" depends on persuading the Court that either the liquidated-damages provision is an unenforceable penalty or Vecino waived its right to liquidated damages under the contract. The same is true of its requests to preclude any evidence of (1) certain "consequential damages," (2) "estimated costs" related to installing

4

acoustical caulking, and (3) "excess" damages. As discussed below in relation to Lund-Ross's partial motion for summary judgment, some of Lund-Ross's evidentiary issues will be better resolved at trial.

### 3. Vecino

Vecino's motions, on the other hand, cut the other way. Its motion for partial summary judgment largely turns on prohibiting Lund-Ross's nonretained experts, Scott Thompson ("Thompson"), Tyler Adam ("Adam"), and Jason Hillmer ("Hillmer and collectively, the "delay experts"), from offering evidence regarding purported delays on the project, their impact on Lund-Ross's ability to complete the project, and any additional time Lund-Ross should have had to complete it. Though Vecino's motion in limine expressly mentions limiting evidence at trial, its statement of facts and arguments in support of partial summary judgment depend at least in part on Lund-Ross being unable to present admissible evidence related to its current position on waiver and on project delays it attributes to Vecino.

Vecino primarily seeks exclusion under Federal Rules of Evidence 401 (relevance), 402 (admissibility), and 403 (balancing). According to Vecino, potential evidence on those matters is "inadmissible because [the delay experts'] opinions regarding delay are unfounded in the critical path method of adjustment" and do not account for "concurrent delays" as required by the contract. Vecino contends the challenged evidence would unnecessarily confuse and mislead the jury as to the meaning of delay under the contract.

Vecino further argues Lund-Ross did not properly disclose the delay experts as required by Federal Rule of Civil Procedure 26(a)(2)(C) because it did not summarize their opinions or the facts on which they relied. Finally, Vecino broadly asserts the challenged "opinions are not founded in sufficient facts and data; not founded in reliable principles and methods; and not the result of reasonably applied principles and methods as required by Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals., Inc.*, 509 U.S. 579, 589-95 (1993)."

After careful review of the record to this point, the Court finds the delay experts' challenged testimony should be excluded. Evidence is generally admissible if it is relevant, *see* Fed. R. Evid. 402, and evidence is relevant if it has "any tendency" to make a consequential fact "more or less probable," Fed. R. Evid. 401; *see also Vogt v. State Farm Life Ins. Co.*, 963 F.3d 753, 772 (8th Cir. 2020).

Given that broad definition, it is not hard to see how firsthand evidence from Lund-Ross's employees about Vecino's delays on the project and purported extensions of time Lund-Ross received could have some probative value in deciding key issues of waiver and liquidated damages in this case. But finding relevance does not end the inquiry. Rule 403 permits the Court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *See also White Commc'ns, LLC v. Synergies3 Tec Servs., LLC*, 4 F.4th 606, 612 (8th Cir. 2021). "A trial judge can and should exclude evidence when convinced that" the danger it creates substantially outweighs its value. *Krekelberg v. City of Minneapolis*, 991 F.3d 949, 956 (8th Cir. 2021) (quoting *Wade v. Haynes*, 663 F.2d 778, 783 (8th Cir. 1981)). Such is the case here.

Of course, many of the dangers contemplated by Rule 403 are obviated or at least mitigated in a bench trial. *See EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 898 (9th Cir. 1994) (explaining "in a bench trial, the risk that a verdict will be affected unfairly and substantially by the admission of irrelevant evidence is far less than in a jury trial"); *Schultz v. Butcher*, 24 F.3d 626, 632 (4th Cir. 1994) (deciding that in a civil bench trial, "evidence should not be excluded under [Rule] 403 on the ground that it is unfairly prejudicial"). But Rule 403 balancing still serves important purposes, particularly with respect to avoiding undue delay and efficiently using limited judicial resources. *See Gulf States Utils. Co. v. Ecodyne Corp.*, 635 F.2d 517, 519 (5th Cir. 1981) ("Excluding relevant evidence in a bench

6

trial because it is cumulative or a waste of time is clearly a proper exercise of the judge's power."). Judges are also not innately or wholly immune from needless issue confusion.

Lund-Ross protests that actual delays caused by Vecino should not be ignored and contends any issue of waiver potentially related to those delays "squarely belongs" before the jury. Yet Lund-Ross neither specifically challenges Vecino's interpretation of the contract with respect to critical path and concurrent delay nor has done the work necessary to bring Vecino's purported delays within the specific terms of the parties' agreement. Indeed, despite months of discovery and two ripe motions for partial summary judgment on these issues, Lund-Ross admits "an exact amount of days' worth of delay [attributable to Vecino] has not been elicited" and fails to identify any feasible way to get its proposed evidence to the factfinder in a way that is meaningful in terms of its contract with Vecino. Lund-Ross's conclusory statement that its proposed evidence is "relevant and entirely admissible in this case" is insufficient.

Lund-Ross curiously chastises Vecino for complaining "that Lund-Ross has not prepared and presented the same [critical-path] analysis that Vecino's own expert witnesses refused to provide." But the simple fact that one of Vecino's experts declined to provide certain opinions about scheduled delays says nothing about whether Lund-Ross can carry its evidentiary burden on these issues. Despite ample opportunity, Lund-Ross has not shown it could present the challenged evidence in a way that would not create an undue risk of causing unnecessary delay, confusing the issues, or wasting time under the circumstances. *See* Fed. R. Evid. 403. Unless the proposed delay evidence is properly grounded in the terms of the contract, those risks substantially outweigh the evidence's limited value, even within the context of a bench trial.

As for disclosure, Lund-Ross does not seriously contend that it properly disclosed the delay experts' opinions. Instead, it opines, "It is hard to imagine what prejudice Vecino has suffered even if the opinions were not properly disclosed in light of the fact that Vecino had the opportunity to depose each to include the multi-part depositions of" Thompson,

Hillmer, and Adams. As Lund-Ross sees it, "Vecino had a full opportunity to question each under oath and examine all of their opinions" regardless of whether Lund-Ross properly disclosed their opinions. Lund-Ross again misses the mark.

As Vecino points out, the opportunity to depose a witness does not necessarily cure a deficient disclosure or dissolve any prejudice. *See*, *e.g.*, *Meyer v. Currie Tech Corp.*, 329 F.R.D. 228, 234 (D. Neb. 2018) (citing *Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 642 (7th Cir. 2008) (concluding a deficient expert report was not harmless because the deficiencies forced the other party to depose the expert "with little or no understanding as to what he would testify")). What's more, prejudice to the opposing party is only one factor the Court considers; it also weighs "any prejudice to the judicial system[] and the need to deter similar misconduct in the future." *Id.* at 233 (quoting *Bonds v. Dist. of Columbia*, 93 F.3d 801, 808 (D.C. Cir. 1996)). At any rate, the Court need not resolve that issue here given its ruling under Rule 403 that the evidence should be excluded.

### B. Cross-Motions for Partial Summary Judgment
#### 1. Standard of Review

On cross-motions for summary judgment, the Court views disputed "evidence in the light most favorable to the nonmoving party and" gives them "the benefit of all reasonable inferences." *Principal Nat'l Life Ins. Co. v. Rothenberg*, 70 F.4th 1046, 1052 (8th Cir. 2023) (quoting *Dallas v. Am. Gen. Life & Accident Ins. Co.*, 709 F.3d 734, 736 (8th Cir. 2013)); *see also Eggers v. Wells Fargo Bank, N.A.*, 899 F.3d 629, 632 (8th Cir. 2018). But the Court will not resort to speculation, *see Redlich v. City of St. Louis*, 51 F.4th 283, 286 (8th Cir. 2022), nor "credit mere allegations, unsupported by specific facts or evidence," *McKey v. U.S. Bank Nat'l Ass'n*, 978 F.3d 594, 598 (8th Cir. 2020) (quoting *Williams v. United Parcel Serv., Inc.*, 963 F.3d 803, 807 (8th Cir. 2020)).

Summary judgment is required on an issue if the moving party "shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if it may 'affect the outcome of the suit.'"

*Erickson v. Nationstar Mortg., LLC*, 31 F.4th 1044, 1048 (8th Cir. 2022) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Jesski v. Dakota, Minn. & E. R.R.*, 43 F.4th 861, 864 (8th Cir. 2022) (quoting *Zubrod v. Hoch*, 907 F.3d 568, 575 (8th Cir. 2018)).

### 2. Merits

Between them, Vecino and Lund-Ross contend at least ten substantive issues can be decided as a matter of law before trial. Some are old; some are new. Now that discovery is complete, Vecino asks the Court to find (1) Lund-Ross breached the contract by missing the hard completion deadline, (2) that breach entitles Vecino to liquidated damages under the contract, (3) Vecino did not waive its right to recover those liquidated damages, and (4) Lund-Ross is liable for at least $1,100,878.58 in liquidated damages, "subject to enlargement based on evidence of additional damages to presented at trial."

For its part, Lund-Ross primarily asks the Court to dismiss Vecino's liquidated-damages claims. As it did in contesting the Court's first order on partial summary judgment, Lund-Ross maintains that the liquidated-damages provision in the contract is an unenforceable penalty and that Vecino waived "by its own conduct" any right it may have had to liquidated damages. Lund-Ross also contends it is entitled to summary judgment on any claim for (1) liquidated damages for any period of time after Vecino terminated Lund-Ross under the contract, (2) consequential damages beyond the liquidated-damages provision, (3) "the estimated cost for installing acoustical caulking" and moving tenants during the installation, and (4) "any overages on costs to complete the project in excess of $388,396.23 or for subcontractor liens on the project in excess of $369,831.96."

Some of the parties' issues are relatively straightforward and can be expeditiously resolved as a matter of law. *See Bedford v. Doe*, 880 F.3d 993, 996 (8th Cir. 2018) ("A principal purpose of the summary-judgment procedure 'is to isolate and dispose of factually unsupported claims or defenses,' with due regard being given to the rights of

9

those opposing a claim or defense to demonstrate in the manner provided by Rule 56, prior to trial, that a claim or defense has no factual basis." (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986))). Lund-Ross does not earnestly dispute Vecino's assertions that Lund-Ross did not complete the project by what this Court determined was a fixed completion date of May 31, 2019, and did not provide the certificates of occupancy and completion as required by the contract. Those facts establish Lund-Ross's material breach.

The Court also rejects Lund-Ross's attempt to relitigate its sweeping argument that the liquidated-damages provision as a whole is an unenforceable penalty under Nebraska law. *See Kozlik v. Emelco, Inc.*, 483 N.W.2d 114, 121 (Neb. 1992) ("This court has consistently upheld the right of contracting parties to privately bargain for the amount of damages to be paid in the event of a breach of contract, provided the stipulated sum is reasonable in light of the circumstances."). Lund-Ross has not provided any reasonable basis to alter the Court's prior ruling on that overarching issue. *See Lund-Ross*, 2021 WL 6202667, at *4-7.

Lund-Ross does plow some new ground with respect to its claims that (1) Vecino now "readily acknowledges that the liquidated damages provided for in the contract were not intended to be a reasonable estimate of damages Vecino would suffer were the project to be delayed, but just an estimate of <u>some</u> of the damages" and (2) "[a]ssessing liquidated damages against Lund-Ross for any period of time in which it was terminated from the project under the circumstances outlined [in its brief] reveals the punitive nature of the damages claim." Yet that new ground ultimately obtains no greater yield. Lund-Ross urges the Court to find that those claims ineluctably turn the liquidated-damages provision—approved by the Court after a thorough review of Nebraska law—into an unenforceable penalty. But Lund-Ross fails to cite any authority from Nebraska courts or anywhere else to support its view. What's more, as the Court previously noted, "Lund-Ross should have addressed any" issues it had with the scope and practical operation of § 11.5.2, such as the potential loss of control, "before it signed the contract." *Id.* at *7.

In light of Lund-Ross's new arguments and Vecino's response, the Court has carefully reexamined the relevant factors for determining whether a stipulated amount in a construction contract "is liquidated damages or a penalty" under Nebraska law. *Id.* at *4. The Court again concludes Lund-Ross has not met its burden to show Vecino's alleged liquidated damages are an unenforceable penalty in the circumstances of this case. *See id.* at 4-6. Lund-Ross simply does not adduce sufficient evidence to show the type of inherent unreasonableness or obvious overcompensation the Nebraska Supreme Court has said evinces a penalty. *See, e.g.*, *Abel Constr. Co. v. Sch. Dist. of Seward*, 195 N.W.2d 744, 747-48 (Neb. 1972); *Parsons Constr. Co. v. Metro. Utils. Dist. of Omaha*, 104 N.W.2d 272, 275 (Neb. 1960).

That is not to say Vecino is necessarily entitled to all the damages it seeks. As noted, the parties raise several issues with respect to waiver and damages. Taking waiver first, the Court notes that considerable discovery has occurred in this case since the Court decided that open fact questions precluded Vecino's initial request for a declaration that it was entitled to recover liquidated damages. Drawing on that discovery, Vecino has renewed its request for a ruling that it "did not waive its rights to recover liquidated damages from Lund-Ross." Lund-Ross seeks the opposite.

"Waiver is a voluntary and intentional relinquishment or abandonment of a known existing legal right or such conduct as warrants an inference of the relinquishment of such right." *Davenport Ltd. P'ship v. 75th & Dodge I, L.P.*, 780 N.W.2d 416, 425 (Neb. 2010). To establish waiver, Lund-Ross must show "clear, unequivocal, and decisive action of [Vecino] showing such purpose, or acts amounting to estoppel on [its] part." *Id.* A party may waive its rights under a contract "in whole or in part, either directly or inferentially, and the waiver may be proved by express declarations manifesting the intent not to claim the advantage, or by so neglecting and failing to act as to induce the belief that it was the intention to waive." *U.S. Pipeline, Inc. v. N. Nat. Gas Co.*, 930 N.W.2d 460, 480 (Neb. 2019).

In support of its motion, Lund-Ross contends "Vecino has waived its right to claim liquidated damages" by delaying progress on the project, "extending the completion deadline[,] and providing revised plans only after the deadline passed." According to Lund-Ross, Vecino repeatedly approved delays "all without reference to enforcement of the completion deadline found in § 11.5.2" of the contract.

Vecino responds by highlighting Lund-Ross's ongoing struggle to specifically controvert Vecino's factual assertions with pinpoint record citations as required by Rule 56 and Local Rule 56.1(b)(1). *See Lund-Ross*, 2021 WL 6202667, at *6 (describing the Court's authority to consider improperly controverted facts as undisputed for purposes of summary judgment). Noting "[j]udges are not like pigs, hunting for truffles buried in briefs," *United States v. Stuckey*, 255 F.3d 528, 531 (8th Cir. 2001) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)), Vecino urges the Court to deem as admitted several of its key factual averments about liquidated damages. In Vecino's view, "[n]o reasonable jury could find in favor of Lund-Ross on its waiver defense because there is no evidence that Vecino voluntarily or intentionally relinquished its right to liquidated damages."

Vecino first notes that the contract requires waivers to be written. Vecino acknowledges that Nebraska law provides that "[e]ven a provision in a written contract that specifies that a waiver of the conditions and terms of the agreement must be in writing may be waived by acts or conduct." *U.S. Pipeline*, 930 N.W.2d at 480. But Vecino asserts the absence of a written waiver at least raises the bar for Lund-Ross—essentially doubling its burden. *See Weber v. N. Loup River Pub. Power & Irrigation Dist.*, 854 N.W.2d 263, 272 (Neb. 2014) (setting a high bar for proving waiver). As Vecino sees it, all the available evidence indicates Vecino expressly and "repeatedly put Lund-Ross on notice of its intent to pursue liquidated damages. Vecino points to oral statements it made over the course of the project and multiple writings it sent both before and after the final completion date.

With respect to Lund-Ross's arguments that Vecino impliedly waived its right to claim liquidated damages by delaying the project and granting extensions, Vecino contends (1) owner delay is not an exception under § 11.5.2 and (2) Lund-Ross has not produced any admissible "evidence to support the conclusion that there was <u>any</u> owner-caused delay in this case" within the meaning of the contract, "let alone [delay] of a magnitude necessary to find an intentional relinquishment of Vecino's right to liquidated damages." In support, Vecino again faults Lund-Ross for failing to retain an expert who could conduct the "contractually mandated" critical-path and concurrent-delay analysis and provide "any admissible evidence on this topic at trial."

Having carefully reviewed the parties' submissions and the balance of the summary-judgment record, the Court finds Vecino is entitled to summary judgment on the issue of waiver. In resisting Vecino's motion, Lund-Ross clings tightly to the Court's preliminary ruling on waiver, arguing the Court "need not consider Vecino's repeated request" for summary judgment on that issue. But the argument ignores the fact that the record is now far more developed than it was before months of targeted discovery. Despite ample opportunity, Lund-Ross has failed to adduce sufficient evidence to create a triable issue on waiver. *See* Fed. R. Civ. P. 56(e); *Ball v. City of Lincoln*, 870 F.3d 722, 727 (8th Cir. 2017) (explaining a party resisting summary judgment "'may not rely on allegations or denials,' . . . but must substantiate his allegations with 'sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation [or] conjecture.'" (alterations in original) (quoting *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007))).

Turning to damages, the Court notes the parties raise a mix of legal and factual questions. *See*, *e.g.*, *Alpha Wealth Advisors, LLC v. Cook*, 983 N.W.2d 526, 534 (Neb. 2023) ("While it is the jury's duty to determine the amount of damages, it is the duty of the trial court to refrain from submitting the issue of damages to the jury where the evidence is such that a jury could not determine the issue without indulging in speculation or conjecture."); *U.S. Pipeline*, 930 N.W.2d at 474-75 ("The issue of whether damages are

13

consequential under a contract is a question of law that we review de novo, but the factual determinations underlying such a characterization are reviewed for clear error.") (footnotes omitted). The Court finds that effectively addressing the parties' extensive arguments regarding the proper amount of damages in this case and whether specific damages should be classified as direct or consequential will require additional factual development. In other words, the remaining damages issues are better resolved on a more complete record developed at trial than by this Court on overlapping cross-motions for summary judgment on admittedly incomplete and imperfect information. *See*, *e.g.*, *Id.* at 475-77 (reviewing the often context-specific distinction between direct and consequential damages under Nebraska law as they relate to a contractual waiver provision); *TNT Cattle Co., Inc. v. Fife*, 937 N.W.2d 811, 836 (Neb. 2020) (explaining "[t]he amount of damages to be awarded is a determination solely for the fact finder" based upon admissible evidence and proven with reasonable certainty).

One last issue is likewise better suited for resolution after further factual development at trial—acoustical sealant. *See Anderson*, 477 U.S. at 249 (noting the judge's function on summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial"). Lund-Ross falls far short of showing it is entitled to summary judgment on the issues of breach and damages it briefly raises with respect to the use of acoustical sealant on the project. *See In re Buchanan*, 31 F.4th 1091, 1093 (8th Cir. 2022) ("The party moving for summary judgment has the initial burden to show that there is no genuine dispute of material fact and that it is entitled to judgment as a matter of law."); *accord Celotex*, 477 U.S. at 323. Lund-Ross's assertion that the project plans did not require acoustical sealant is not definitive.

Because genuine disputes of material fact remain on this issue, summary judgment is not appropriate. *Cf.*, *e.g.*, *Redmond v. Kosinski*, 999 F.3d 1116, 1120 (8th Cir. 2021) ("If there is a dispute, and a reasonable jury could return a verdict for either party, then

summary judgment is not appropriate." (quoting *Jones v. Minn. Dep't of Corr.*, 512 F.3d 478, 482 (8th Cir. 2008))).

Based on the foregoing,

IT IS ORDERED:

1. Defendant/counter-plaintiff Vecino Natural Bridge, LLC's Motion in Limine (Filing No. 80) is granted.
2. Vecino's Second Motion for Partial Summary Judgment (Filing No. 76) is granted in part and denied in part.
3. Plaintiff/counter-defendant Lund-Ross Constructors, Inc.'s combined Motion for Partial Summary Judgment and Motion in Limine (Filing No. 84) is denied in its entirety.
4. This case remains set for non-jury trial on February 12, 2024.

Dated this 30th day of August 2023.

BY THE COURT:

Robert F. Rossiter, Jr.
Chief United States District Judge